1   BRIAN J. STRETCH (CABN 163973)
    United States Attorney
2
    BARBARA J. VALLIERE (DCBN 439353)
3   Chief, Criminal Division

4   SARAH HAWKINS (CABN 257723)
    Assistant United States Attorney
5
        1301 Clay Street, Suite 340S
6       Oakland, California 94612
        Telephone: (510) 637-3680
7       FAX: (510) 637-3724
        sarah.hawkins@usdoj.gov
8
    Attorneys for United States of America
9

10                  UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                    SAN FRANCISCO DIVISION

13

14  UNITED STATES OF AMERICA,              )  CR 15-00439 MMC
                                           )
15          Plaintiff,                     )  GOVERNMENT'S SENTENCING
                                           )  MEMORANDUM
16      v.                                 )
                                           )  Date:  December 7, 2016
17  PATRICK HARVEY,                        )  Time:  2:15 p.m.
                                           )
18          Defendant.                     )  Hon. Maxine M. Chesney
    _____    )

19

20

21

22

23

24

25

26

27

28

**<u>TABLE OF CONTENTS</u>**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

THE DEFENDANT'S OFFENSE CONDUCT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

I.    FBI Identifies Patrick Harvey as a Target and Discovers his Troubling
      and Prolific Communications about Child Pornography . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . 1

II.   Execution of Search Warrant Reveals that the Defendant Possessed, Received,
      and Distributed Child Pornography . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

VICTIM IMPACT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

III.  A Sentence of 120 Months is Appropriate Based On Section 3553(a) Factors . . . . . . . . . . . . 6

      A.    The Need for the Sentence Imposed to Reflect the Seriousness of the
            Offense, to Promote Respect for the Law, and to Provide Just
            Punishment for the Offense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

      B.    The Nature and Circumstances of This Offense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      C.    The Need to Deter Criminal Conduct and Protect the Public . . . . . . . . . . . . . . . . . . . 9

      D.    Restitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

            a.    *Statutory Framework* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            b.    *case Law Overview* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

            c.    *Calculating the Amount of Restitution Owed* . . . . . . . . . . . . . . . . . . . . . . . .12

            d.    *Restitution to Sarah is Mandatory* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

                  1.    Causation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

                  2.    Apportionment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

                        *(i)    Sarah* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

1

## <u>TABLE OF AUTHORITIES</u>

2

## FEDERAL CASES

3

4
*New York v. Ferber*,
    458 U.S. 747 (1982) .................................................................................................. 10

5

*Paroline v. United States*, ___U.S._,
6    __, 134 S.Ct. 1710 (2014) ........................................................................ 10, 11, 13, 14

7
*United States v. Booker*,
    543 U.S. 220 (2005) .................................................................................................... 7

8

*United States v. Boos*,
9    127 F.3d 1207 (9th Cir. 1997) ................................................................................. 7, 8

10
*United States v. Carty*,
    520 F.3d 984 (9th Cir. 2008) ...................................................................................... 7

11

12
*United States v. Daniels*,
    541 F.3d 915 (9th Cir. 2008) ...................................................................................... 8

13
*United States v. Goldberg*,
    491 F.3d 668 (7th Cir. 2007) ...................................................................................... 8

14

15
*United States v. Ressam*,
    679 F.3d 1069 (9th Cir. 2012) .................................................................................... 7

16

## FEDERAL STATUTES

17
18 U.S.C. § 2252(a)(2) ................................................................................................... 1

18
18 U.S.C. § 2252(a)(4)(B) .............................................................................................. 1

19
18 U.S.C. § 2259(a) ...................................................................................................... 10

20
18 U.S.C. § 2259(b)(1) ................................................................................................. 10

21
18 U.S.C. § 2259(b)(3) ................................................................................................. 10

22
18 U.S.C. § 3553(a) ........................................................................................................ 7

23

## FEDERAL RULES

24
Federal Rules of Criminal Procedure 11(c)(1)(A) ......................................................... 1

25

26

27

28

1

## INTRODUCTION

2      On December 1, 2015, the defendant, Patrick Harvey, was charged in a three count Superseding

3   Indictment for the following violations: 1) 18 U.S.C. § 2252(a)(4)(B) – Possession of Child

4   Pornography; 2) 18 U.S.C. § 2252(a)(2) – Receipt of Child Pornography; and 3) 18 U.S.C. § 2252(a)(2)

5   – Distribution of Child Pornography.  On September 14, 2016, the defendant pled guilty to Count Two

6   of the Superseding Indictment.  On December 7, 2016, the defendant will stand before the Court to be

7   sentenced.  The government respectfully requests that this Court accept the plea agreement submitted by

8   the parties under Federal Rules of Criminal Procedure 11(c)(1)(A) and 11(c)(1)(B).

9      The government affirms the defendant's Level 31 Total Offense Level, as set forth in the Plea

10   Agreement and calculated by the Probation Office.  The government also affirms the defendant's

11   criminal history category of I as calculated by the Probation Office.  However, the government

12   respectfully disagrees with the Probation Office's recommendation for a variance below the guidelines

13   range.  Based on the defendant's conduct and the § 3553(a) factors as discussed below, the government

14   recommends a mid-range guidelines sentence of 120 months.

15                    **THE DEFENDANT'S OFFENSE CONDUCT**

16   **I.    FBI Identifies Patrick Harvey as a Target and Discovers his Troubling and Prolific
          Communications about Child Pornography.**

17

18      The FBI learned of a female living in San Francisco, California, who was using the internet to

19   view, send, and receive child pornography.  PSR at ¶ 7.  The investigation revealed that she used Skype

20   to communicate with other individuals who had a sexual interest in children.  *Id.* Agents executed a

21   search warrant at her home and learned that she had several images and videos of child pornography

22   stored on her electronic devices that depicted young children, including infants and children up to 14

23   years old.  *Id.*  The individual also used the internet to communicate with minors and enticed them to

24   send naked photographs of themselves to her.  *Id.*  She further admitted to soliciting adults to sexually

25   abuse their children, while she watched via webcam.  *Id.*

26      During her interview with agents, the individual stated that she met the defendant on

27   motherless.com and that she met with him in person and that he was "into this stuff."  *Id.* at ¶ 8.  The

28

GOVERNMENT'S SENTENCING MEMORANDUM
CR 15-00439 MMC                              1

1  individual told agents that she would view child pornography with the defendant and then they would

2  "hook up." *Id.* The individual also stated that the defendant told her that he was dating a female drug

3  addict that had a daughter. *Id.*

4      A forensic review of the individual's cell phone showed text messages between this individual

5  and the defendant. *Id.* at ¶ 9. During these text message exchanges, the defendant says, "I love

6  watching little ones" and "id love to make you eat a little girl while im fucking you form behind." *Id.*

7  The defendant communicated with this individual for several months. *Id.* at ¶ 10. *See* Exhibit 1, filed

8  separately under seal.

9      The communications demonstrate the defendant's predatory desire to engage in the abuse of

10  children and brag about it. In these messages, the defendant describes his own sexual abuse of children,

11  including receiving oral sex from a minor in the bathroom of a Target, masturbating at a park, groping

12  children at the Bay to Breakers[1] race, and "sneaking in pokes" while his niece was sleeping. In the text

13  messages, the defendant also discusses future plans to exploit children. Excerpts of these texts are as

14  follows (the defendant's messages are in bold):

15  March 19, 2014
- **Getting head from a sml person as we speak… thought u should know;)**

16  - pics or it didn't happen :)
- **Nope, had to do it quickly in a Target bathroom lol, but I kept a token of my**

17  **triumph… one sec**
- *Patrick then sends a photo of a pair of female children's underwear*

18  - Omfggggg. Target bathroom??! OK if that's actually true we gotta hang out soon, so
  u can tell me all about it! Omg I cant even imagine how u ended up in that situation!!

19  - **I'd love to :) whens your next day free?**
- Unfortunately I'm working 5 nights straight this week! Sucks… So I'm not off till

20  Monday!
- **Same here so no worries..omg I wish you were there!**

21  - Omfg! I can't even imagine how u ended up in that situation!!! And yeah I wish I was
  there too!

22  - **It was an ordeal lol**
*See* Exhibit 1, pp. 17-18

23

24  April 7, 2014
- **I'm just being a p3[2] right now and had to share**

25  - Oh nice
- **Indeed :) @ the park now stroking it**

26  - Omfg… u know I want details… Or Skype me! Where r u btw?
*See* Exhibit 1, pp. 27-28

27  _____
  [1] Bay to Breakers is an annual footrace that happens on the third Sunday of May in San

28  Francisco.

    [2] P3 and P3do are slang terms for pedophile.

April 10, 2014
- Just realized that I live right by a school or something because I just heard the sounds of k1d5 on a playground… the thing is…
- **Damn lol what kind of school?**
- What kind of school do u THINK I mean – fuckin sf state or some college? Hell nah… U know what kind of school :) I sooo want you P3 fuck meat inside my cunt right about nowwwww

*See* Exhibit 1, p. 32

April 28, 2014
- Whats up my p3 idol, u should go jack in the park… Or wheevr u might be seen but not caught
- **If I end up groping one ill take a pic for ya**
- Mmmm vid, and u can just have ME hold the camera.

*See* Exhibit 1, p. 43

May 18, 2014
- **Its Bay to brakers tomorrow… Im grabbing as much lil ass as I can in the crowd**
- **Got my finger deep in one, then disappeared in to the crowd! Fuck that was awesome**
- **Ya no worries do your thang. Let me know if you want me to cum by. I had an eventful p3 today and would love to share :)**
- Pics or it didn't happen! But don't forget to be a cautions p3

*See* Exhibit 1, p. 52

September 26, 2014
- **Im gonna take a video of me stroking my cock at the park :)**
- **Im heading to the park now. School got out recently**
- Mmmmm Elementary I hope, don't say high school, u can lie
- **Middle skl… but there are always little ones there**
- Mmmm u gonna jerk in car… or flash from afar… or?
- **Jerk in the car for now. There are too many people at this time. Once I see a couple walking home ill flash**

*See* Exhibit 1, p. 70-71

September 27, 2014
- **Lol ill pin one down in broad daylight next time I see ya then. One last hoorah before I get hulled off to jail**

*See* Exhibit 1, p. 74

January 1, 2015
- **Oh just chatting with my lil friends**
- Mmmmm cum over and stick that predatory cock inside my cunt while whispering what you've been doing with them
- **Its not that my brother and his family showed up … niece is sleeping… im sneaking in pokes**
- Mmmmm, you should take a pic or video and send it to me (of a sneaky moment) I promise id delete it right after I watch it

*See* Exhibit 1, p. 124

In one of the text messages, the defendant provided his motherless.com username. *Id.* Agents

served a subpoena to motherless.com and were provided with the defendant's e-mail address and last

used IP address.  *Id.*  Administrative subpoenas were served to google and Comcast.  *Id.*  Comcast provided subscriber information that identified the account as belonging to the defendant's father.  *Id.*

## II.   Execution of Search Warrant Reveals that the Defendant Possessed, Received, and Distributed Child Pornography.

On August 28, 2015, SFPD officers and FBI agents executed a search warrant at the defendant's residence.  PSR at ¶ 11.  During the execution of the search warrant, child pornography was found on a laptop that belonged to the defendant.  *Id.*  A cellphone was also confiscated and had evidence of communication with minor children.  *Id.*  SFPD officers and agents interviewed the defendant and he provided the password for his phone. *Id.*  He informed agents that he would download all types of items on his laptop and that they would find "strange" porn on his computer.  *Id.*  Officers asked the defendant about this relationship with the individual discussed above.  *Id.*  The defendant told them that he had met her approximately five times in person and that they would communicate often via text message.  *Id.*

Agents discussed the defendant's chats with him and he indicated that everything was fantasy and that nothing had ever happened.  *Id.* at ¶ 12.  While agents were interviewing the defendant, a pair of children's underwear was discovered in a shirt pocket in his room.  *Id.*  The defendant stated that they belonged to his ten- year old niece.  *Id.*  The defendant explained that his niece hid them there because she peed her pants.  *Id.*  However, later in the interview, the defendant said that he found his niece's underwear in his closet.  *Id.*  He confirmed that he masturbated into the underwear and put them into his shirt pocket.  *Id.*

The defendant admitted that he received and sent child pornography through yahoo messenger.  *Id.* at ¶ 14.  He confirmed that he had been texting with an individual who is listed in his phone as "pedomom."  *Id.*  The defendant stated that pedomom is an adult female who has a young daughter.  *Id.*  He admitted to meeting pedomom at her house and having sex with her, but denied ever meeting her daughter.  *Id.*  According to the case agent, the individual identified as "pedomom" has an eight-year old daughter.  *Id.*  A forensic interview was conducted with the eight-year old girl and she revealed that her mother would wake her up and bring her into her bedroom at night, where she was molested.  *Id.*

Officers also identified a victim in the defendant's phone.  *Id.* at ¶ 15.  The victim was identified as a fifteen-year old girl.  *Id.*  The defendant admitted that he communicated with her online and asked

1   for naked pictures of her, which she sent him.  *Id.*  He also confirmed that he knew she was a minor.  *Id.*

2   The defendant stated that he created a fake Facebook account to communicate with the minor victim.

3   *Id.*  A forensic review of the defendant's phone revealed several text message conversations between

4   him and the victim.  *Id.*  In the messages, the defendant discusses having sex with the victim.  *Id.*

5        The defendant possessed just under 600 images of child pornography.  The images were of

6   mostly female victims, ranging in age from infants to ten-year old girls.  *Id.* at ¶ 16.  There were several

7   images of toddler girls exposing their genitals and a picture of a young girl performing oral sex on an

8   adult male.  *Id.*  Additionally, there were several images of his niece that were taken while she was

9   sleeping.  *Id.*  The defendant possessed an image of a girl who was approximately four years old whose

10  legs and hands were bound by rope.  *Id.* at ¶ 24.  Her legs were spread open, exposing her genitals.

11  "Lick Me Please" was written on her stomach, with an arrow pointing to her vagina.  *Id.*  There was also

12  a gag in her mouth.  *Id.*

13                                              **VICTIM IMPACT**

14        By receiving, distributing, and possessing child pornography, the defendant has directly

15  participated in the abuse of several young girls.  Thirteen victims submitted victim impact statements.

16  *See* Exhibits 2 and 6-16, filed separately under seal.   One victim has also requested restitution, see

17  discussion below.  *See also* Exhibits 3-5, filed separately under seal.

18        The mother of one victim wrote, "I can find no words to express the fury I feel at those who

19  participate in this evil, or my scorn for any attempt to minimize the responsibility by feeble claims that

20  the crime was victimless.  My daughter is a real person. She was horribly victimized to provide this

21  source of "entertainment." She is exploited anew each and every time an image of her suffering is

22  copied, traded or sold.  While the crime is clearly conscienceless, it is hardly victimless."  *See* Exhibit 9,

23  filed separately under seal.  When that mother asked her daughter what she most wanted to ask of the

24  judge, the victim's response was "Please, don't let them pretend no one's getting hurt."  *Id.*

25        One victim described exactly how she was hurt:

26        I am writing to tell you what it is like for me to know that pictures of what my father did to me
        are on the internet… My natural father sexually molested me when I was a child.  First he woke
27        me up at 3-5:00 in the morning on school nights to take pictures… As things progressed he
        started molesting me and taking pictures of me in more private and uncomfortable poses.

28        My father is now in jail and will be for a long time.  And I am not a child anymore.  But I worry

that the people he sent my pictures to will come after me and try to do the same things to me again. I worry that the pictures of me and what he did have been passed on and on and on to many other pedophiles and any one of them or more could be in my neighborhood or at the store I go to or anywhere around me…. I am afraid that …the police will call and tell me that they found more pictures on other people's computers. Every time someone else sees pictures or videos of me it feels like they are the ones who hurt me to begin with. It feels like they are the ones who did this to me, like they are my father and they just want to use me for their own pleasure. It is like I am just here for other people's pleasure and am not a person myself with my own wants and needs. If you are looking at pictures or videos of me, or any other child for that matter, then you are hurting every one that you look at…

*See* Exhibit 2, filed separately under seal.

**DISCUSSION**

The defendant pleaded guilty to Count Two of the Superseding Indictment charging Receipt of Child Pornography.

As set forth in the PSR, the defendant's Sentencing Guidelines calculation is as follows:

| | | | |
|---|---|---|---|
| a. | <u>Base Offense Level</u>:<br>(U.S.S.G. § 2G2.2(a)(2)) | | 22 |
| b. | <u>Specific Offense Characteristic</u><br>(U.S.S.G. § 2G2.2(b)(2))<br>Defendant possessed material involving minors under 12 | | +2 |
| c. | <u>Specific Offense Characteristic</u><br>(U.S.S.G. § 2G2.2(b)(4))<br>Offense involves material portraying depictions of violence | | +4 |
| d. | <u>Specific Offense Characteristic</u><br>(U.S.S.G. § 2G2.2(b)(6))<br>Defendant received images containing child<br>pornography via the internet and used a computer | | +2 |
| e. | <u>Specific Offense Characteristic</u><br>(U.S.S.G. § 2G2.2(b)(6))<br>Defendant possessed at least 300, but fewer than 600<br>images of child pornography | | +4 |
| f. | <u>Acceptance of Responsibility</u>:<br>(U.S.S.G. §§ 3E1.1(a) and (b)) | | -3 |
| g. | <u>Adjusted Offense Level</u>: | | 31 |

*See* PSR ¶¶ 22- 34. The defendant's prior criminal conviction result in a criminal history score of one.

PSR ¶ 39. A total of one criminal history points establishes a criminal history category of I. *Id.*

**III.    A Sentence of 120 Months Is Appropriate Based On Section 3553(a) Factors**

"The overarching statutory charge for a district court is to impose a sentence sufficient, but not

greater than necessary" to achieve the goals of section 3553(a).  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (internal quotations omitted).  In sentencing the defendant, this Court must consider the directives set forth in § 3553(a).  *See United States v. Booker*, 543 U.S. 220 (2005).  To start, the Court must consider the correctly calculated Guidelines range.  *Id*.  However, the Court may not presume that a sentence within the Guidelines range is reasonable because the Guidelines are one among the several § 3553(a) factors that courts are directed to consider in arriving at an appropriate sentence. *Id*.  These goals include the need for the sentence imposed to reflect the seriousness of the offense and provide just punishment; to afford adequate deterrence to criminal conduct; to protect the public from further crimes from the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment.  18 U.S.C. § 3553(a).  "The touchstone of 'reasonableness' is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)."  *United States v. Ressam*, 679 F.3d 1069, 1089 (9th Cir. 2012) (*en banc*).

> **A.**      **The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense**

The child pornography that the defendant possessed and distributed records the sexual exploitation and rape of real children, serious crimes in the view of Congress.  In passing the *Child Pornography Prevention Act of 1996*, Congress recognized that production of child pornography "is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved," because it creates a permanent record of the child's abuse, allowing for continued victimization of that child.  S. Rep. 104-358 § 2 (1)(2) (1996).  The Ninth Circuit recognizes that child pornography's victims are the children in the images.  *United States v. Boos*, 127 F.3d 1207 (9th Cir. 1997).  The Court rejected argument that the only victim of child pornography trading is society in general, observing that sexually abused children:

> who were acted on and adversely affected, who often times were forced to participate in the production of the pornography in which Boos traded, who were injured (both physically and psychologically) as a result of Boos's patronage of the porn industry, who were sacrificed to satisfy Boos's curiosities, who were subjected to the cruelest form of oppression, hardship, and mistreatment…and whose lives were quite possibly destroyed in the process.

GOVERNMENT'S SENTENCING MEMORANDUM
CR 15-00439 MMC                              7

1   *Boos*, 127 F.3d at 1210.  Consumers of child pornography fuel demand for the unlawful production of

2   this material.  "[M]erely possessing child pornography is not a victimless crime," because possession

3   "fuels the demand for the creation and distribution of child pornography," and evidence shows "the

4   harm that children suffer when they are used in the creation of child pornography[,] . . . when that

5   pornography is distributed to others."  *United States v. Daniels*, 541 F.3d 915, 924 (9th Cir. 2008).  "The

6   greater the customer demand for child pornography, the more that will be produced."  *United States v.*

7   *Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007).  Even if consumers of child pornography do not

8   themselves molest children, their actions contribute to child abuse.

9       Here, the defendant's conduct is the progressive sexual exploitation of children that Congress

10  identified in imposing strict penalties for sexual abuse crimes.  Congress found that the mere existence

11  of pornographic materials containing children "creates the potential for many types of harm in the

12  community and presents a clear and present danger to all children; and [] inflames the desires of child

13  molesters, pedophiles, and child pornographers who prey on children," leading to the abuse and

14  exploitation of children as creation and production of additional pornographic material is needed.  S.

15  Rep. No. 104-358, § 2 (10).

16      **B.      The Nature and Circumstances of This Offense**

17      When asked about his communications with the individual discussed above, the defendant

18  claimed that he would communicate often with her via text message and that all of the conversations

19  were fantasy.  PSR at ¶ 11.  He told agents that "everything was fantasy and that nothing had ever

20  happened."  PSR at ¶ 12.  This claim fails for two reasons.

21      First, the defendant possessed images of several real children being raped and sexually assaulted.

22  These images are not harmless.  They depict real abuse.  There are thirteen victim impact statements

23  available for the Court's review.  A sentence of 120 months is justified because the defendant exploited

24  innocent children and young women whose lives have been seriously affected by his crime.

25      Any argument that the defendant's crimes did not seriously injure anyone fails to account for the

26  gravity of the direct and indirect impacts of the defendant's criminal conduct.  By sharing and

27  possessing child pornography to gratify his sexual appetite, the defendant helped to maintain and expand

28  a marketplace for such images.  So long as a marketplace for child pornography exists, more pedophiles'

1   interests will be fed and reinforced and more children will be victimized in order to satisfy those

2   interests.  Though we may never be able to measure the depth of the harm, know the name of every

3   victim, or quantify the defendant's contribution to the harms that flow from this marketplace, they are

4   serious harms and are not to be lightly dismissed.

5         The second reason that the defendant's claim fails is because there is evidence here that suggests

6   the defendant did, in fact, more than just possess or exchange images of child pornography.  He actively

7   exploited a young girl, preying on her and asking her to take naked pictures of herself and photographs

8   of her "pussy."  Moreover, he texted with an individual listed in his phone as "pedomom," an adult

9   female who has a young daughter.  The defendant admitted to meeting pedomom at her house and

10   having sex with her, although he denied ever meeting her eight-year old daughter.  A forensic interview

11   was conducted with the eight-year old girl and she revealed that her mother would wake her up and

12   bring her into her bedroom at night, where she was molested.

13         Possession, receipt, and distribution of child pornography are serious and troubling offenses.

14   However, Patrick Harvey's participation in the exploitation of children goes further than just the sum of

15   the charges, further justifying a sentence of 120 months.

16         **C.**     **The Need to Deter to Criminal Conduct and Protect the Public**

17         The defendant must be deterred from using the internet to exploit child victims and from preying

18   on young women for his own sexual gratification.  A sentence of 120 months would deter the defendant

19   and those who would engage in similar conduct and would show the public that the courts are

20   committed to protecting children from predators.  This sentence also will protect the public, especially

21   young children, from the defendant by removing him from society for a considerable period of time.

22         **D.**     **Restitution**

23         The government received a restitution claim from one victim depicted in the files possessed by

24   the defendant.  This is the victim known as Sarah of the Marineland series.  The materials submitted by

25   counsel representing this victim are included as Exhibits 3-5 in the United States' Exhibits in Support of

26   Sentencing Memorandum, filed separately under seal.  Based on these submissions, and as discussed

27   below, the government asks that the Court order the defendant to pay $2,500 to Sarah.

28

GOVERNMENT'S SENTENCING MEMORANDUM
CR 15-00439 MMC         9

*a. Statutory Framework*

Section 2259 of Title 18 provides for mandatory restitution in child pornography cases. 18 U.S.C. § 2259(a). It specifies that "[t]he order of restitution under this section shall direct the defendant to pay the victim … the full amount of the victim's losses as determined by the court pursuant to paragraph (2)." 18 U.S.C. § 2259(b)(1). These losses include "medical services," "lost income," "attorney's fees," "other costs incurred," and any other losses suffered by the victim as a proximate result of the offense. 18 U.S.C. § 2259(b)(3).

*b. Case Law Overview*

In its opinion in *Paroline v. United States*, ___U.S.___, 134 S.Ct. 1710 (2014), the Supreme Court recognized that the crime of possession of child pornography is not a victimless crime and reiterated that even people who simply possess such images play an "indisputable role" in the harm suffered by the victims. *Id.* at 1727. The Court noted that the harms caused by child pornography are not limited to the abuse that takes place when the images are created. *Id.* at 1716 – 17 (quoting *New York v. Ferber*, 458 U.S. 747, 759 (1982) ("The harms caused by child pornography, however, are still more extensive because child pornography is a 'permanent record' of the depicted child's abuse and 'the harm to the child is exacerbated by [its] circulation,'")).[3] "Because child pornography is now traded with ease on the Internet, 'the number of still images and videos memorializing the sexual assault and other sexual exploitation of children, many very young in age, has grown exponentially.'" *Id.* (quoting United States Sentencing Comm'n P. Saris et al,, Federal Child Pornography Offenses 3 (2012)).

In *Paroline*, the Court was deciding whether a defendant who possessed two pornographic

---

[3] As illustration of the "devastating harm caused by child pornography," the Supreme Court quoted from an impact statement of one of the individuals whose images the respondent possessed, and in which the victim described the trauma of knowing that the photographs that were taken of her by her uncle when she was eight and nine years old are being circulated and viewed endlessly. 134 S.Ct. at 1716-17. The victim explained that she felt "powerless to stop it just like I was powerless to stop my uncle… My life and my feelings are worse now because the crime has never really stopped and will never really stop… It's like I am being abused over and over and over again… *Id.* at 1717. The Court stated that "[t]he full extent of this victim's suffering is hard to grasp." *Id.* It noted that her abuser "took away her childhood, her self-conception of her innocence, and her freedom from the kind of nightmares and memories that others will never know." *Id.* The Court went on to say that "[t]hese crimes were compounded by the distribution of the images of her abuser's horrific acts, which meant the wrongs inflicted upon her were in effect repeated; for she knew her humiliation and hurt were and would be renewed into the future as an ever-increasing number of wrongdoers witnessed the crimes committed against her." *Id.*

1  images of a child victim is liable for restitution to that victim years later for all or part of the financial

2  losses the victim incurred for expenses such as counseling and lost income as a result of the trauma

3  experienced from the continual dissemination of her images to thousands of individuals such as the

4  defendant. *Paroline* at 1716-18.  The victim in *Paroline* sought restitution from the defendant for lost

5  income, future treatment, attorney's fees and costs, and conceded that her losses did not flow from

6  defendant's specific conduct. *Id.* at 1717.

7      In analyzing this request, the Court started by holding that "a proximate-cause requirement

8  applies to all the losses described in § 2259." *Id*. at 1722.  The government must show that the

9  defendant "was part of the overall phenomenon that caused [the victim's] general losses." *Id*. at 1726.

10  This is true even if the victim is unaware of a particular defendant's conduct. *See, id*. at 1723.  The

11  Court explained: "The cause of the victim's general losses is the trade of her images.  And [the

12  defendant] is a part of that cause, for he is one of those who viewed her images." *Id*.  "While it is not

13  possible to identify a discrete, readily definable incremental loss [a specific defendant] caused, it is

14  indisputable that he was part of the overall phenomenon that caused her general losses." *Id*.  The Court

15  held that "the victim's costs of treatment and lost income resulting from the trauma of knowing that

16  images of her abuse were being viewed over and over are direct and foreseeable results of child-

17  pornography crimes." *Id*. at 1722.

18      The Court also held that restitution is mandatory when the victim establishes losses caused by

19  the trafficking of the victim's images:

20      "Where it can be shown both that a defendant possessed a victim's images
        and that the victim has outstanding losses caused by the continuing traffic in
21      those images but where it is impossible to trace a particular amount of those losses
        to the individual defendant by recourse to a more traditional causal inquiry,
22      a court applying § 2259 should order restitution in an amount that comports with the
        defendant's relative role in the causal process that underlies the victim's general losses."
23

24  *Id*. at 1727.

25      The Court was adamant that the statute requires restitution in these cases, even when the loss

26  attributable to a single defendant cannot be established concretely:

27      "Denying restitution in cases like this would also be at odds with the penological
        purposes of § 2259's mandatory restitution scheme.  In a sense, every viewing of
28      child pornography is a repetition of the victim's abuse.  **One reason to make**

GOVERNMENT'S SENTENCING MEMORANDUM
CR 15-00439 MMC                    11

**restitution mandatory for crimes like this is to impress upon offenders that their conduct produces concrete and devastating harms for real, identifiable victims… It would be inconsistent with this purpose to apply the statute in a way that leaves offenders with the mistaken impression that child-pornography possession (at least where the images are in wide circulation) is a victimless crime."**

*Id*. at 1727 (emphasis added).

As for the causal connection between the offense and injury, there is no need to prove loss or causation in regards to any particular offender – it is the harm inflicted by the aggregated conduct of offenders that is particularly relevant. *Paroline*, at 1726-27. To the extent a defendant engaged in certain aggravating conduct, that can be considered, but there is no requirement to provide particularized conduct leading to particularized harm. *Id*. All that matters is that a victim's loss was generally attributed to the trafficking in and viewing of the victim's images. The materials submitted by the victims and filed separately easily exceed that burden of proof.

Further, the Court held that the size of any defendant's portion of restitution should be determined by the district court, in its exercise of discretion. *It*. at 1728. The Court emphasized that there is no "precise mathematical inquiry" governing this determination and that district courts will have to exercise "discretion and sound judgment" in fashioning awards. *Id*. The Court said that the sentencing court "must assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses." *Id*. at 1727-28. The amount assessed should be neither "severe" nor "token or nominal." *Id*. at 1727.

### c. Calculating the Amount of Restitution Owed

The Court in *Paroline* emphasized that there is no "precise mathematical inquiry" governing apportionment and that district courts will have to exercise "discretion and sound judgment" in fashioning restitution awards. *Id*. at 1728. The Court held that district courts may start their calculations by determining "the amount of the victim's losses caused by the continuing traffic in the victim's images (excluding, of course, any remote losses …)." *Id*. In determining the share of those losses for which a particular defendant should be held liable, courts may then consider a variety of factors which "could include" the following: (1) "the number of past criminal defendants found to have contributed to the victim's general losses;" (2) reasonable predictions of the number of future offenders

1   likely to be caught and convicted for crimes contributing to the victim's general losses; (3) "any

2   available and reasonably reliable estimate of the broader number of offenders" (most of whom will, of

3   course, never be caught or convicted); (4) whether the defendant reproduced or distributed images of the

4   victims; (5) whether the defendant had any connection to the initial production of the images; (6) how

5   many images of the victim the defendant possessed; and (7) any other facts relevant to the defendant's

6   relative causal role. 134 S.Ct. at 1728. The Supreme Court also invited the government to "inform the

7   district courts of the restitution sought and ordered in other cases." Following these "rough guideposts,"

8   district courts are to enter restitution orders that are neither "severe" nor "trivial." *Id.* The Court held

9   that these factors should "serve as rough guideposts for determining an amount that fits the offense." *Id.*

10       The Court recognized that "[t]his approach is not without its difficulties." *Paroline*, at 1729.

11  "[C]ourts can only do their best to apply the statute as written in a workable manner, faithful to the

12  competing principles at stake:  that victims should be compensated and that defendants should be held to

13  account for the impact of their conduct on those victims, but also that defendants should be made liable

14  for the consequences and gravity of their own conduct, not the conduct of others." *Id.*

15       The Court noted that "[t]he primary goal of restitution is remedial or compensatory." 134 S.Ct. at

16  1726.  Beyond the goals set out above, the Court stated that restitution also serves to – "impress upon

17  offenders that their conduct produced concrete and devastating harms for real, identifiable victims." *Id.*

18       ***d. Restitution to Sarah is Mandatory***

19               **1.  Causation**

20       Counsel on behalf of the individual known as Sarah has submitted claims for restitution.  *See*,

21  Exhs. 3-5, filed separately under seal.  The victim has established that the defendant, as a possessor of

22  three images of the individual's sexual abuse as a child, is a proximate cause of harm suffered by the

23  victim.  Through counsel, the victim has provided sufficient information to meet the proximate cause

24  requirement set out in *Paroline*.  That is, counsel has provided information through the words of the

25  victim, the victim's family, treating psychologists and other professionals to establish that the

26  defendant's obtaining of images of the victim through the internet and possessing those images were

27  "part of the overall phenomenon that caused [the victim's] losses." *Paroline*, at 1723.  In addition, the

28  victim has provided information regarding financial expenses incurred and expected.   Thus, the

1  government has met its burden of showing that the defendant possessed the victim's image and the

2  victim has established "outstanding losses caused by the continuing traffic in those images." *Id*. at 1727.

3  ### 2. Apportionment

4  The victim has requested that the defendant pay a larger amount of restitution than what the

5  government recommends here. The government's request for restitution apportioned to the defendant is

6  based on the victim's submissions as well as the government's analysis of the *Paroline* factors.

7  ### (i)  Sarah

8  Counsel for the victim known as Sarah (the Marineland series) has requested that the Court order

9  the defendant to pay $25,000 in restitution and an additional $1,500 in attorney fees. *See*, Exh. 3 Letter

10  of Carol L. Hepburn, at p. 2. After considering the materials submitted on behalf of Sarah by counsel

11  and the *Paroline* factors, the government requests that the Court order the defendant to pay $2,500.

12  a. <u>Past Criminal Defendants Who Have Contributed</u> –Counsel for Sarah recently informed the

13  government that there are now 350 orders of restitution for Sarah, including state and federal cases, and

14  that 36 defendants have made payments thus far, with gross receipts of $78.850.40. Of this, Sarah has

15  received $26,283.67 and the remainder has gone to fees and out-of-pocket expenses.

16  b. <u>Reasonable Predictions of Future Offenders Likely to be Caught / Convicted</u> – This factor is

17  impossible to estimate with any degree of certainty.

18  c. <u>Reasonable Estimate of the Broader Number of Offenders Involved</u> – The government did

19  not receive any information from NCMEC regarding this specific victim in the Marineland series.

20  d. <u>Whether the Defendant Reproduced or Distributed Images</u> – The government cannot

21  establish that the defendant reproduced or distributed images of the victim known as Sarah.

22  e.  <u>How Many Images the defendant Possessed</u> – The defendant possessed three images

23  depicting Sarah.

24  In light of all available information, the government submits that a restitution order of $2,500 is

25  appropriate.

26  ### CONCLUSION

27  The government urges the Court to sentence the defendant to a mid-range guideline term of 120-

28  months for the reasons discussed above. The government agrees with the Probation Office that the

GOVERNMENT'S SENTENCING MEMORANDUM
CR 15-00439 MMC                                    14

1    defendant be subject to a supervised release term of 10 years (with conditions determined by the Court

2    and including the search conditions agreed to by the parties), a fine to be determined by the Court,

3    restitution of $2,500 to the victim known as Sarah, and a mandatory special assessment of $100.

4

5    Dated: November 30, 2016                                Respectfully submitted,

6                                                            BRIAN J. STRETCH
                                                             United States Attorney
7

8                                                           By: _____/s/_____
                                                               SARAH HAWKINS
9                                                              Assistant United States Attorney

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOVERNMENT'S SENTENCING MEMORANDUM
CR 15-00439 MMC                                   15